**ZIMMERMAN REED LLP**
Ryan J. Ellersick (CA Bar No. 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
ryan.ellersick@zimmreed.com

**JANOVE PLLC**
Raphael Janove (CA Bar No. 361193)
500 7th Ave., 8th Fl.
New York, NY 10018
Tel: (646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Bryan Semones and Randi Leinen,** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**American Behavioral Research Institute, LLC D/B/A Relaxium**,

Defendant.

Case No.: 2:25-cv-12291-MWC-ADS

**SECOND AMENDED CLASS ACTION COMPLAINT**

1. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.
2. Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.
3. Violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code. §§ 1750, *et seq*.
4. Violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq*.
5. Common Law Fraud
6. Unjust Enrichment

**JURY TRIAL DEMANDED**

Plaintiffs Bryan Semones and Randi Leinen ("Plaintiffs"), on behalf of themselves and others similarly situated, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, allege against Defendant American Behavioral Research Institute ("Defendant") as follows:

## PRELIMINARY STATEMENT

1. This is a class action lawsuit against Defendant, which sells a purported sleep aid called "Relaxium Sleep" (the "Product") on its website, www.tryrelaxium.com (the "Website") and over the phone. Defendant primarily retails its products through automatically renewing monthly subscriptions (the "Product Subscriptions"). By this action, Plaintiffs challenge Defendant's illegal practice to drive profits through a fake "free trial" scheme tied to automatically renewing Product Subscriptions without proper disclosures.

2. This is not a case about the functioning (or non-functioning) of Defendant's Products, advertised using well-known personalities such as retired NFL quarterback Dan Marino, pundit Bill O'Reilly, former Governor and current U.S. Ambassador Michael Huckabee, and Dr. Phil. Rather, this is a case about Defendant's scheme to trick potential customers into paying for products that are advertised as "free" and to entrap customers into expensive and unwanted automatically renewing subscriptions.

3. Visitors to the Website are presented with an offer to "TRY RISK FREE: Just cover shipping."[1] When consumers click the "TRY RISK FREE" button, they are brought to page where they are told that for "a Small Shipping & Handling Fee of $7.95" they will get a "FREE TRIAL." Consumers who call Defendant's phone line are given the same assurance of a "free trial."

4. When the "free trial" shipment arrives, it includes two bottles: the bottle that is for use during the two-week trial, and a second bottle with a "30-day supply"

---

[1] https://www.tryrelaxium.com/

that is effectively the first installment of an automatically renewing subscription. However, when customers, such as Plaintiffs, seek to cancel the automatically renewing subscription, they learn that cancellation is required not just to avoid charges for future shipments, but also to avoid charges for the initial "free trial" shipment. That is, consumers learn that they are required to pay for *both* the "free trial" bottle and the second "30-day supply" unless: (1) they have not already opened one of the bottles; (2) they *mail back* the unopened bottle at their own expense; and (3) they attempt to cancel by calling an 888- phone number. Defendant does not adequately disclose this highly unusual requirement at the point of sale, in its welcome emails to customers seeking to avail themselves of the "free trial" offer, or at any time prior to an attempt to cancel.

5. Plaintiffs seek monetary and injunctive relief against Defendant for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.;* California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"); and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.* Defendant's conduct also violated the California Auto-Renewal Law, Cal. Bus. & Prof. Code §§ 17600-17606 (the "ARL") by a) failing to present its complete auto-renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the purchase is fulfilled, b) charging consumers without first obtaining their affirmative consent to the auto-renewal scheme; and c) failing to provide an acknowledgement that includes the automatic renewal offer terms, correct cancellation policy, and information explaining how consumers can cancel the auto-renewal. Finally, Defendant's deceptive scheme constitutes common law fraud and unjust enrichment.

## JURISDICTION

6. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed

classes is a citizen of a different state than Defendant.

7. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint asserts claims pursuant to Defendant's violations of the EFTA, 15 U.S.C. §§ 1693, *et seq*. This court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this District, directed the conduct at issue to Plaintiffs and the Class while they were known to be residing in California, and a substantial part of the acts and omissions that Plaintiffs complain of occurred in this District.

## VENUE

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

10. Plaintiff Bryan Semones is an individual who resides and intends to remain in California. On or about May 19, 2024, while residing in California, Plaintiff Semones ordered Defendant's "Relaxium Sleep TR" by calling Defendant's phone line provided in one of Defendant's television advertisements.

11. Plaintiff Randi Leinen is an individual who resides and intends to remain in California. On or about January 21, 2025, while residing in California, Plaintiff Leinen ordered Defendant's "Relaxium Sleep TR" by going to the Relaxium Website after viewing one of Defendant's television advertisements.

12. Defendant American Behavioral Research Institute, despite its name, is not a non-profit research organization or trade association, but rather a private company that exists for the purpose of marketing Relaxium Sleep and related supplements over the internet and at major retailers, including Amazon, Walmart, and CVS. Defendant is a Florida LLC headquartered in Boca Raton, FL.

## FACTS

### I. Defendant Unfairly Advertises a "FREE TRIAL" That is Not Free and Traps Consumers in Product Subscriptions

13. Defendant designed its "free trial" to trick consumers into paying for at least two months of product. Defendant fails to disclose adequately that the "Risk free" trial involves signing up for a recurring subscription. Defendant also fails to disclose adequately that an individual signing up for a "free trial" is receiving not one "free" bottle, but rather two bottles, one of which is subject to a trial period, and one of which is effectively the first shipment in the recurring subscription. Defendant also fails to adequately disclose that the "free trial" bottle is not free, but merely payment-deferred—that is, consumers must pay for *both* bottles unless they cancel the "free trial" within a limited period of time. Finally, Defendant fails to disclose adequately that, in order to avoid being charged for both bottles of the "free trial," they must return—at their own expense—one of the bottles without having opened it. Defendant thus deceptively advertises a "free trial," that is "risk-free," easy to cancel, and fully refundable, despite the presence of material cancellation conditions that are either not disclosed, or are inadequately disclosed, at the point of sale.

14. As a direct result of Defendant's deceptive conduct, Plaintiffs and the Class have suffered damages and have lost money and property, including expenses for bottles that were deceptively advertised as "free" and unwanted automatically renewing transactions.

15. Defendant's marketing strategy involves an aggressive television ad campaign—featuring prominent figures such as Dan Marino, Bill O'Reilly, Mike Huckabee, and Dr. Phil—touting Relaxium as "America's #1 Trusted Sleep Aid," which "has changed millions of lives." In these television ads, viewers are repeatedly told to

"call now" to "get your bottle for free"[2] or to "get your risk-free bottle, money back guaranteed."[3] To order their "free" bottle, viewers are directed to the Relaxium Website or Relaxium's phone number.

A. <u>Purchasing Through the Relaxium Website</u>

16. When consumers navigate to the Relaxium Website, they are again presented with the promise to "TRY RISK FREE."[4]




17. By clicking "TRY RISK FREE," a consumer is taken to a "checkout" webpage that again reinforces the promise to provide a "free" bottle of the Product. The consumer is told that the only thing they must pay is a "Small Shipping & Handling Fee of $7.95" in order to claim their "FREE TRIAL."[5] A graphic showing a single bottle of

---

[2] https://www.ispot.tv/ad/fomM/relaxium-this-election-1000-bottle-giveaway-featuring-mike-huckabee

[3] https://www.ispot.tv/ad/TvCY/relaxium-70-million-americans-featuring-bill-oreilly

[4] https://www.tryrelaxium.com

[5] After this lawsuit was filed in December 2025, Defendant changed the language from "FREE TRIAL," to "RISK-FREE TRIAL." *Compare* https://web.archive.org/web/20251202182345/https://tryrelaxium.com/checkout.php (December 2, 2025), *with* https://web.archive.org/web/20260417155745/https://www.tryrelaxium.com/checkout.php (April 17, 2026).

the Product explains the "Free Trial Details"[6]—the consumer is spending "$0.00" for the "order" and "$7.95" for shipping. The consumer is required to enter their credit or debit card information, purportedly to cover the $7.95 shipping fee.




18. Before June 2024, Defendant's checkout page stated, in small print at the bottom of the page, that by partaking in the "FREE TRIAL", the consumer was signing up for a subscription of two bottles every two months, at a cost of $120. The small print stated that the consumer had 14 days to cancel the subscription, that a consumer could cancel either by visiting help.relaxium.com or by calling an 888- number, and that cancellation required returning one unopened bottle. But the disclosure did not make clear that the consumer would be responsible for the cost of returning the bottle.

[6] After December 2025, Defendant likewise changed this language to "Risk-Free Trial Details."

Nor did it make clear that if the consumer did not cancel within 14 days, he or she would be charged for the initial "free trial" two-bottle shipment, as opposed to future recurring shipments. That is, the disclosure did not make clear that the "FREE TRIAL" was not "free" at all but simply involved delayed payment. Moreover, the disclosure was not "clear and conspicuous" under the ARL because it was smaller than the surrounding text on the checkout page and was not set off in a manner that clearly called attention to the language.[7]




19. In or about July 2024, Defendant entirely removed statements from the checkout page mentioning the requirement to return one unopened bottle as part of the cancellation process. In addition, overwhelming the small-print statement about recurring charges, Relaxium added a statement in large bold print that all its products come with a "**90-day Money Back Guarantee.**"[8]

---

[7] https://web.archive.org/web/20240528194317/https://tryrelaxium.com/checkout.php (May 28, 2024).

[8] https://web.archive.org/web/20240722144544/https://tryrelaxium.com/checkout.php (July 22, 2024).




20. This language has not changed since the July 2024 update, except that the current version of the checkout page on the Website removes the reference to cancelling on "help.relaxium.com" (replacing that reference with a customer service email).[9] This disclosure continues to fail to meet the ARL's "clear and conspicuous" requirements as it is smaller than the surrounding text and is not set off in a manner that clearly calls attention to the language.

21. In contrast to the fine-print disclosures on its checkout page, elsewhere on its website, Defendant explains that it will only process returns under the conditions that: (1) the consumer first call a phone number to receive a "Return Merchandise Authorization"; (2) the consumer returns at least one unopened bottle; and (3) "customer is responsible for return shipping." Notably, these terms are not disclosed on the checkout page, the terms need not be viewed to place an order, and the consumer

[9] https://tryrelaxium.com/checkout.php (last accessed July 24, 2026).

does not expressly consent to those terms when checking out. Rather, these terms are only visible to consumers who—even though they have no knowledge of the requirement to return Product in order to avoid being charged for the Product shipped during the "free trial"—click on the word "Terms" or "Returns" in the footer at the bottom of the checkout page.[10]

B. Calling Relaxium's Phone Line

22. Consumers who call Relaxium's phone line referenced in the television ads, instead of visiting its Website, receive even less information. They are greeted by Bill O'Reilly, who promises to "Make America Sleep Again," followed by an automated attendant who states "Congratulations, you called in time to get one of the last free trials of Relaxium sleep we are giving away for this airing." Consumers who start to place an order are told that "All we will collect from you is $7.95 for shipping and handling." Consumers are walked through an automated checkout process. Consumers are not told that they will be charged for the free trial bottles, nor are they told that to avoid paying for two bottles, they must return one bottle unopened at their own expense.

23. Consumers who call Relaxium's phone number from a mobile phone are directed to complete their order online, even if they choose to hang up the call before providing personal information. Consumers receive a text message directing them to "https://trust.tryrelaxium.com/free," which has another version of the checkout page that substantially mirrors the checkout page on the Website. The "trust" checkout page indicates that the consumer is getting one free bottle and paying only for shipping—the graphic expressly crosses out the price of "$44.95" and replaces it with a bright red "FREE."

---

[10] https://www.tryrelaxium.com/returns.php? (last accessed July 24, 2026). These return terms have remained materially identical since at least early 2023, but Defendant moved the terms to a specific "Returns" page in or about September 2025. *Compare*, https://web.archive.org/web/20250806082951/https://tryrelaxium.com/ (August 6, 2025), *with* https://web.archive.org/web/20250909002127/https://tryrelaxium.com/ (September 9, 2025).




24. Again, in small print at the bottom of the "trust" checkout page, Defendant states, for the first time, that the consumer is signing up for a renewing subscription and is receiving not one, but two "30-day supply bottles," that if the consumer does not cancel within 17 days, he or she will be charged for *both* bottles, and that the monthly price is not "$44.95," but rather $59.95. The "trust" checkout page does not disclose that a customer must return an unopened bottle to avoid being charged for both the bottles in the "free trial" shipment, nor does it disclose that the return must be at the customer's own expense.



Enjoy 14 peaceful Nights of Sleep on us! Pay only $7.95 for S&H and receive two 30-day supply bottles of AMERICA'S #1 TRUSTED SLEEP AID, & enroll in our exclusive Subscribe & Save program with FREE SHIPPING for life. Simply cancel within 17 days of placing your order or the card you provide today will be charged $59.95 for each month supply we are shipping you today. You will continue to receive two bottles of Relaxium® Sleep every two months and the card you provide today will be charged $59.95 per bottle until you cancel. You are in complete control & can delay, modify or cancel anytime by emailing support@relaxium.com or by calling 888-353-1205. Our Unconditional 90-Day Satisfaction Guarantee always applies! So, You Have A Whole New Life To Gain Without Any Risk!



Relaxium® is so confident that Relaxium® Sleep will improve the quality of your sleep and have a remarkable impact on your overall health, all products come with a **90-day Money Back Guarantee.**

25. This small-print disclaimer from the "trust" checkout page is identical to the small-print disclaimer that appears on the main Relaxium Website checkout page. Moreover, as with the main Relaxium Website checkout page, the disclosure is not "clear and conspicuous" under the ARL because it is smaller than the surrounding text on the checkout page and is not set off in a manner that is clearly designed to call attention to

the language.[11]

26. Notably, Defendant sells Relaxium for substantially less through channels other than the "free trial" offered on its Website and television ads. The bottles of Relaxium received through the "free trial" and ongoing subscription as advertised on television and its Website cost $59.95 per bottle. But the same product is sold for approximately $23 on Amazon,[12] $30 at CVS,[13] and $24 at Walmart.[14] Defendant also sells Relaxium through one of its other websites, relaxiumlife.com, where the Product is only $24.[15] Defendant's grossly inflated pricing of the Product through its advertising on television and the Website demonstrates that the "free trial" scheme is nothing more than a money grab designed to extract at least $120 from each consumer who places an order through those channels, regardless of whether the consumer affirmatively cancels the "free trial."

**II. Defendant has a Pattern of Complaints Related to the Unopened Bottle Requirement and Unauthorized Charges**

27. According to the Better Business Bureau ("BBB"), Relaxium has approximately 144 complaints lodged to the BBB within the last 3 years, many of which relate to unwanted charges associated with the purportedly "free trial," the requirement to return an unopened bottle at the consumer's expense, and the automatic renewal.[16]

28. These complaints describe consumers who were induced by television and online advertisements promising a "risk-free" or "no-risk" "free" trial for the cost of

---

[11] https://web.archive.org/web/20240528194317/https://tryrelaxium.com/checkout.php (May 28, 2024).

[12] https://www.amazon.com/Relaxium-Non-Habit-Supplement-Magnesium-Melatonin/dp/B00NJ1BQZA

[13] https://www.cvs.com/shop/relaxium-sleep-capsules-prodid-7200801?skuId=647047

[14] https://www.walmart.com/ip/Relaxium-Natural-Sleep-Aid-Non-Habit-Forming-Sleep-Supplement-60-CP-Pack-of-1/133406215

[15] https://relaxiumlife.com/products/relaxium-sleep-v3

[16] https://www.bbb.org/us/fl/boca-raton/profile/vitamins-and-supplements/relaxium-0633-90052703/complaints (last visited July 28, 2026).

shipping, only to be charged substantial fees shortly thereafter for the free trial product, additional bottles, and subscriptions they did not believe they authorized. Complainants report that cancellation was conditioned on returning an unopened bottle at their own expense or paying a charge exceeding $100, a requirement they state was not clearly disclosed before purchase and was revealed only after they attempted to cancel.

29. The following are examples of some of the complaints:

> **Initial Complaint** — **Type:** Product Issues
> **Date:** 02/04/2026 — **Status:** Answered
>
> [redacted] raved about this sleeping pill and they advertised a free sample. Upon going to the Relaxium site to girder the sample, the site tried every which way for me to buy all sorts of package deals. Eventually I had to close the site down as end never got to the sample order. On 1/2/26 my order for the $7.95 shipping on my [redacted] And 2 bottles showed up soon after. My new monthly [redacted] bill showed $119.20 charged on 1/20/26. I called, and they said that I had to return 1 bottle, unopened, at my own expense, to avoid the massive charge. Clearly they had intensions of scamming me, since the 2nd bottle was sent without explanation and the later massive charge was not up front in advertising the free sample. Upon calling them they would only refund $90, take it or leave it. So it cost me $40 overall. Downright criminal. Right now I am afraid more product will come from them unrequested.

> **Initial Complaint** — **Type:** $ Billing Issues
> **Date:** 10/13/2025 — **Status:** Answered
>
> Ordered via [redacted] news website for $7.95 trial offer. Billed 9/10 for $7.95, but was subsequently billed $$119.90 9/27. This is a scam, and was not made aware of subsequent shipments...totally misleading. Did not have a chance to evaluate product, and did not authorize subsequent periodic shipments. Cancelling credit card after all authorized charges are posted.

**Initial Complaint** — **Type:** Product Issues

**Date:** 10/13/2025 — **Status:** Answered

Recently, I saw an ad on TV with the former governor of Arkansas who I trusted. So, I decided to try Relaxium and get a free bottle because the commercial said all I had to do was pay $7.95 shipping.NO-RISK! 100% guarantee. During the process they kept trying to sell me additional products. It became overwhelming.I was then prompted to confirm my order with the understanding that I would receive additional shipments. I would not confirm this. Finally it let me complete the no risk trial without additional products or shipments. I agreed and paid the $7.95 shipping.I took the Relaxium and it kept me awake because my stomach was so upset.I told my husband and then thank God he noticed even though I declined, they signed me up for a subscription. I emailed the company to cancel this unauthorized subscription.They wrote back: Weve canceled your subscription per your request. However, just a reminder that you are still responsible for the delayed billing charge of $119.90 (plus any applicable taxes) for the two bottles already received.We were very upset and felt taken advantage of and scammed.I called and the lady told me that I would be charged for the 2 bottles over $120 plus tax.I told her no, it was supposed to be a risk-free trial for just the cost of shipping, $7.95. She said I could send back the unopened bottle. I was only supposed to get one bottle in the first place!I said no I don't want to send anything back. She then offered a 50% discount to keep the product. I said no. Then offered a 75% discount if I keep the product and she would only charge me about $30 plus tax. I was so frustrated and upset at this point that against my better judgment I reluctantly agreed. I wish I wouldn't have. Their commercial is VERY misleading and deceptive. She said they tried to be transparent with their advertising.Their commercial was NOT transparent in any way!

**Initial Complaint** — **Type:** Product Issues

**Date:** 10/11/2025 — **Status:** Answered

Relaxium sleep advertises "Tryrelaxium Sleep Risk-Free Trial". they ask for 7.95 for shipping. They advertise a "Claim your 90-Day Trial ". The fine print says that I must cancel within the first 17 days to avoid be billed. That is not a free 90 day trail. I received two bottle today 10/11. I called and cancelled so I could have my full trail period. They said to get the free trail, that I had to send back one of the bottle. That is totally against what is advertised as " Tryrelaxium Sleep Risk-Free Trial". Phone number is [redacted] to order and to cancel it is [redacted].The return mail is going to cost my [redacted]. I expect to be paid back for the [redacted] and 7.95 for a total of [redacted].

**Initial Complaint**

**Type:** Service or Repair Issues

**Date:** 10/03/2025

**Status:** Answered

I ordered a free trial Relaxium Sleep supplement in September. The free period was to be 14 or 17 days. The company charged me $129.94 before the trial period had concluded. Luckily, my bank denied the payment. I called the company and told them not to send any more product because it did not work. I told them not to charge further payments. I told them I would return an unused bottle of the product to them which I did on 9/30/25. But they charged before the product could reach them. I would like for you to contact them and tell them to stop charging for products that are supposed to be in a free trial period. These people are dishonest and interested only in making money and not being professional and treating their potential customers fairly. I am in the process of recovering the money through my banks fraud department. I just want you to warn them to stop doing business this way.

**Initial Complaint**

**Type:** Product Issues

**Date:** 09/10/2025

**Status:** Answered

Product no better than other over the counter sleep products You are given the impression you can try the product for just paying a small shipping charge They send an extra bottle and plan to start charging a monthly fee of around $60 per month within a couple of weeks, not enough time to evaluate the product I received the product on 8/15/2025 I called the on 8/18/2025 to stop future orders and charges, but was not told I would be charged $128 if I didnt return both bottles I later found out about the charge and got a return number I had seen something in their correspondence having until October to try the product not realizing I only had a short time to return the product or be charged the $128 On September 10th my credit card was charged $128, less than 30 days after ordering the sample bottle This is a scam, and Huckabee, and Oreilly should be ashamed to have their names associated with this scam

**Initial Complaint**

**Type:** Product Issues

**Date:** 07/29/2025

**Status:** Answered

We were referred on [redacted] tv ads for Relaxium to claim a free trial on 7/12/25. Already paid for the shipping charges of $8.00 when the product arrived. But recently, Relaxium tried to charge me $125 for a subscription plan that I didn't authorize. So I call Relaxium customer service to notify that I didn't want to have the subscription plan. My mom and I were disturb by this tv as scam. Only got a refund of $70. And we never use their products again.

**Initial Complaint**

**Type:** Service or Repair Issues

**Date:** 05/30/2025

**Status:** Resolved

Relaxium is promoted by [redacted] and [redacted] on TV, both credible individuals. A couple of weeks ago I responded to my "free" bottle of Relaxium. I understood that there would be a $7.95 shipping charge. I was then prompted to confirm my order with the understanding that I would receive additional Shipments. I would not confirm this. I was then prompted that I would still receive my order without additional shipmemts. I agreed. After trying pills out of one bottle I was disappointed in the results and called the company at [redacted]. I became suspicious and also wanted to confirm that I was not to automatically receive more monthly shipments. I was told that I would be charged for the open bottle (over $125) and told to send back the unopened bottle to [redacted]. [redacted]. I was given a return merchandise # of [redacted]. I was speaking directly to "Woodly". I was then told that if I kept the unopened bottle I could get a 50% discount. I responded "no". I was then told the discount would be raised to 75% off and pay$29.97.. I reluctantly agreed since it was going to cost me to ship back the unopened bottle. I don't feel that I should be charged the $29.97 based on my initial understanding, and if they want the unopened bottle back they should send me postage. I will monitor my situation and credit card charges for the near future as I am very suspicious. This is a very uncredible way of doing business and I noticed numerous complaints posted on your site regarding this company. [redacted]

### III. Plaintiffs' Experiences

30. Plaintiffs' experiences mirror the many complaints lodged against Relaxium on the BBB website.

A. Plaintiff Semones

31. On or about May 19, 2024, after viewing one of Defendant's television ads, Plaintiff Semones called the Relaxium phone number provided in the ad. On the phone call, a prerecorded greeting informed Plaintiff Semones that he could have a "free trial" of the Product, and that all he had to pay was $7.95 for shipping. Defendant directed Plaintiff Semones to an online platform—the "trust" checkout page—to finalize the checkout process. On the "trust" checkout page, Plaintiff Semones provided his debit card to cover the cost of shipping. Plaintiff Semones placed an order of "Relaxium Sleep TR" and was billed $8.57 for shipping.

32. The "trust" checkout page that Plaintiff Semones accessed did not clearly and conspicuously disclose the terms of the offer. On information and belief, the small-print disclaimer on the "trust" checkout page that Plaintiff Semones accessed was identical to the small-print disclaimer on the checkout page of the Relaxium Website in May 2024, as referenced in ¶18 of this Second Amended Complaint.[17] Thus, like the checkout page on the Relaxium Website, the "trust" checkout page that was displayed to Plaintiff Semones did not make clear (1) that he would be responsible for the cost of returning an unopened bottle, and (2) that if he did not cancel within 14 days, he would be charged for the initial "free trial" two-bottle shipment, as opposed to future recurring shipments. Further, the disclosure was not "clear and conspicuous" under the ARL because it was smaller than the surrounding text on the "trust" checkout page and was not set off in a manner that clearly called attention to the language.

33. Plaintiff Semones believed that the $8.57 shipping charge was the

---

[17] As noted above, the small-print disclaimer is the same on both the current version of the Relaxium Website checkout page and the "trust" checkout page.

only charge that he would receive, and that the product that he received for the "Free Trial" would be free for him to try and his to keep.

34. Plaintiff Semones was surprised when he received not one, but two bottles of product.

35. The email confirmations that Plaintiff Semones received after placing his order indicated that he was signing up for a subscription and that he had "14-days to opt out." Plaintiff Semones believed that meant that so long as he cancelled the subscription within fourteen days, he would receive no further charges for the product.

36. The "welcome" email Plaintiff Semones received did not adequately set forth the automatic renewal terms and cancellation information required by ARL § 17602(a)(3).

From: **Relaxium** <support@relaxium.com>
Date: Sun, May 19, 2024 at 5:43 AM
Subject: Welcome to the Relaxium Family! Your Order and Subscription Information #[redacted]
To: Bryan Semones [redacted]

RELAXIUM — Order Confirmation

**Order Number:** [redacted] — Ordered On: 05/19/2024 08:43am
**24/7 Help Desk:** help.Relaxium.com

Bill to: Bryan Semones [redacted]
Ship to: Bryan Semones [redacted]

**Items in Your Order**

**Relaxium Sleep TR**

**Order Total: $8.57**

Unless you opt out, you will be automatically enrolled in a subscription program. Once you receive your trial order you will have 14-days to opt out, at which time you will then be charged $59.95 per bottle of Relaxium Sleep. From that point forward you will receive two fresh bottles every two months at the same price until cancellation. To manage/cancel your order, please call us at 888-353-1205 or go to help.relaxium.com.

37. The "welcome" email explained that "[U]nless you opt out, you will automatically be enrolled in a subscription program. Once you receive your trial order, you will have 14-days [sic] to opt out, at which time you will then be charged $59.95 per bottle of Relaxium Sleep. From that point forward you will receive two fresh bottles every two months at the same price until cancellation." Although this small-print disclosure stated that Plaintiff Semones would be charged for future recurring shipments, it did not make clear that, during the "trial order," Plaintiff Semones would receive two bottles of Product, one that is subject to the "free trial" and one that is effectively the first installment of the recurring automatic shipment. The "welcome" email did not indicate that Plaintiff Semones would be charged for *both* bottles in the "trial order" unless he cancelled during the 14-day window. Nor did the "welcome" email mention the requirement that, to avoid being charged for both bottles, Plaintiff Semones must return one unopened, nor did it disclose the requirement that Plaintiff Semones return the unopened bottle at his own expense.

38. Similarly, when Plaintiff Semones received a "Shipping Confirmation" from Defendant in relation to his purchase, the email included no disclosure of the auto-renewal terms, cancellation information, or the requirement to return an unopened bottle at Plaintiff Semones's own expense:

From: **Relaxium** <support@relaxium.com>
Date: Mon, May 20, 2024 at 12:06 PM
Subject: Shipment Notification #[redacted]
To: Bryan Semones [redacted]

Shipping Confirmation

**Order Number:** [redacted]

Ordered on
05/19/2024
08:43am

Dear Bryan Semones,

We are pleased to inform you that one or more of your items has shipped. Please see the details of the shipment below.

Ship to Bryan Semones
[redacted]

Bill to Bryan Semones
[redacted]

Carrier Name Priority Mail
Tracking Number [redacted]

**Items in Your Shipment**

**Relaxium Sleep TR**

39. On or about May 31, 2024, Plaintiff Semones called Defendant to "opt out" and cancel the "free trial" to avoid any charges for the Product. Plaintiff Semones was not informed by the customer service agent that "opting out" only applied to future shipments of product and that he would be charged for the first two bottles he had received. In addition, the customer service agent did not tell Plaintiff Semones that to receive a refund of that charge, he would have to return an unopened bottle of product and pay for shipping.

40. On or about June 5, 2024, Defendant charged Plaintiff Semones's debit card $129.19.

41. On or about June 6, 2024, Plaintiff Semones called Defendant to inquire about the unauthorized charge of $129.19. Plaintiff Semones explained that he

already cancelled the "free trial" and any ongoing subscription. For the first time, Defendant informed Plaintiff Semones that the $129.19 was for the two bottles Plaintiff Semones had already received as part of the "free trial," and that Plaintiff Semones could obtain a refund and fully cancel the "free trial" only if Plaintiff returned one of the bottles unopened. Plaintiff Semones thought that the "Free Trial" advertisements were misleading and so he responded with words to the effect of, "Wow, that's tricky." Because Plaintiff Semones had already opened both bottles, he could not comply with Defendant's cancellation policy.

42. Plaintiff Semones did not know, when he agreed to participate in Relaxium's "Free Trial" on May 19, 2024, that he would be sent two bottles of Relaxium, that he would be charged $129.19 for those two bottles, and that he would only be able to obtain a refund of that $129.19 if he returned one bottle, unopened, at his own expense. He first learned of these terms on June 6, 2024.

43. Had Plaintiff Semones known that his "free trial" was not a free trial, but merely a delayed payment; if he had known his "free trial" shipment would include a second bottle that was effectively the first installment in an automatically renewing subscription; if he had known about the requirement to return an unopened bottle at his own expense in order to obtain a refund of the second charge; or if he had known about Relaxium's automatic renewal terms, Plaintiff Semones would not have ordered the Product from Relaxium, participated in the free trial, or authorized a charge to his debit card of $8.57 for shipping.

44. As a direct and proximate result of Relaxium's deceptive advertising and violations of the ARL, Plaintiff Semones lost money and suffered economic harm.

B. <u>Plaintiff Leinen</u>

45. On or about January 21, 2025, after viewing one of Defendant's television ads, Plaintiff Leinen went to the Relaxium Website referenced in the ad. At the checkout page, Plaintiff Leinen was told she could claim her "Free Trial" by paying a

small shipping and handling fee of $7.95.[18] Under the "Free Trial Details," the checkout page displayed a single bottle of Relaxium and noted that Plaintiff Leinen only had to pay for shipping.

46. As described in ¶19 of the Second Amended Complaint, the small-print disclaimer at the bottom of the checkout page made no mention of the requirement to return one unopened bottle as part of the cancellation process. Further, overwhelming the small-print statement about recurring charges, Defendant stated in large bold print that all its products come with a "**90-day Money Back Guarantee.**"

47. On January 21, 2025, Defendant charged Plaintiff Leinen's credit card $8.77.

48. Plaintiff Leinen believed that the $8.77 shipping charge was the only charge that she would receive, and that the product that she received for the "Free Trial" would be free for her to try and hers to keep.

49. Plaintiff Leinen was surprised when she received not one, but two bottles of product.

50. The email confirmations that Plaintiff Leinen received after placing her order did not disclose that she would be receiving two bottles of Product and that in order to avoid charges for the two bottles she would have to return one of the bottles unopened at her own expense.

---

[18] https://web.archive.org/web/20250122033128/https://www.tryrelaxium.com/checkout.php (January 22, 2025).

support@relaxium.com 1/21/25
To: [redacted]

## Welcome to the Relaxium Family! Your Order and Subscription Information #[redacted]

RELAXIUM Order Confirmation

**Order Number:**[redacted] Ordered On: 01/21/2025 04:42pm
**24/7 Help Desk:** RelaxiumHelp

Bill to Randi Leinen [redacted]

Ship to Randi Leinen [redacted]

**Items in Your Order**

**Relaxium Sleep TR**

**Order Total: $8.77**

Unless you opt out, you will be automatically enrolled in a subscription program. Once you receive your trial order you will have 14-days to opt out, at which time you will then be charged $59.95 per bottle of Relaxium Sleep. From that point forward you will receive two fresh bottles every two months at the same price until cancellation. To manage/cancel your order, please call us at 888-353-1205 or go to RelaxiumHelp.

**support@relaxium.com** 1/23/25
To: [redacted]

## Shipment Notification #[redacted]

Shipping Confirmation

**Order Number:** [redacted]

Ordered on 01/21/2025 04:42pm

Dear Randi Leinen,

We are pleased to inform you that one or more of your items has shipped. Please see the details of the shipment below.

**Ship to** Randi Leinen [redacted]

**Bill to** Randi Leinen [redacted]

**Carrier Name** Priority Mail

**Tracking Number** [redacted]

**Items in Your Shipment**

**Relaxium Sleep TR**

51. On February 27, 2025, Defendant charged Plaintiff Leinen's credit card $132.19. After discovering the unauthorized charge, Plaintiff Leinen called Defendant. Defendant told Plaintiff Leinen that it was too late to cancel. Plaintiff Leinen eventually persuaded Defendant to refund her a portion of the unauthorized charges, and on March 30, 2025, Defendant refunded Plaintiff Leinen $90.00. Defendant retained the other $50.96 that Defendant had previously charged to Plaintiff's credit card.

52. Had Plaintiff Leinen known that her "free trial" was not a free trial, but merely a delayed payment; if she had known her "free trial" shipment would include a second bottle that was effectively the first installment in an automatically renewing subscription; if she had known about the requirement to return an unopened bottle at her own expense in order to obtain a refund of the second charge; or if she had known about Relaxium's automatic renewal terms, Plaintiff would not have ordered the Product from Relaxium, participated in the free trial, or authorized a charge to her credit card of $8.77 for shipping.

53. As a direct and proximate result of Relaxium's deceptive advertising and violations of the ARL, Plaintiff Leinen lost money and suffered economic harm.

## IV. Defendant's Conduct Violates the ARL

54. At all relevant times, Defendant failed, and continues to fail, to comply with the ARL by: (i) failing to present its complete autorenewal offer terms in a clear and conspicuous manner and in visual proximity or temporal proximity to the request for consent to the offer before the purchase is fulfilled, in violation of ARL § 17602(a)(1); (ii) charging consumers' payment method without first obtaining their affirmative consent to the autorenewal, in violation of ARL § 17602(a)(2); and (iii) failing to provide an acknowledgement that includes the automatic renewal offer terms, correct cancellation policy, and information explaining how consumers can cancel the autorenewal, in violation of ARL § 17602(a)(3).

55. In violation of ARL § 17602(a)(1), Defendant's order summary page and verbal checkout process do not present the "automatic renewal offer terms" as defined by ARL § 17601(b) in the manner required by the statute.

56. ARL § 17601 defines "automatic renewal offer terms" as "clear and conspicuous disclosures" of the following: A) That the subscription or purchasing agreement will continue until the consumer cancels; B) The description of the cancellation policy that applies to the offer; C) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the

automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; D) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; E) The minimum purchase obligation, if any.

57. Defendant fails to disclose adequately "[t]he recurring charges that will be charged to the consumer's . . . account," and a "description of the cancellation policy that applies to the offer." In particular, at all relevant times, there was either no disclosure, or inadequate disclosure, of the fact that by placing an order for a "free trial," the consumer would receive both a trial bottle and a second bottle that is effectively the first installment in an automatically renewing subscription. Defendant also failed to disclose adequately that in order to avoid being charged for both the "free" bottle and the second "30-day supply," the consumer must, at his or her own expense, return one of the bottles unopened. As demonstrated by the Better Business Bureau complaints above, many consumers do not realize that the initial $120+ charge from Defendant is not for *future* recurring shipments, but for the "free trial" bottle and the second accompanying bottle that is effectively the first installment of the recurring order. Likewise, consumers do not realize that to avoid these charges—that is, to cancel the recurring order before the first charge—they must return one bottle unopened at their own expense. These inadequate disclosures materially impact the ability of consumers to cancel the subscription before the first recurring charge.

58. The ARL defines "clear and conspicuous" to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language," or, in the case of audio disclosure, "in a volume and cadence sufficient to be readily audible and understandable." § 17601(c). Additionally, "[i]f the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will

change upon conclusion of the trial." Cal. Bus. & Prof. Code § 17602(a)(1).

59. Despite the fact that Defendant's offer "includes a free gift or trial," it does not set forth "the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial" and currently completely omits reference to the requirement that an unopened bottle be returned at the customer's own expense—the "manner" in this context.

60. The ARL provides that it is unlawful to charge a consumer for an auto-renewal without "first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms … including the terms of an automatic renewal offer … that is made at a promotional or discounted price for a limited period of time." ARL § 17602(a)(1). If violated, this results in the return of charges for failure to obtain affirmative consumer consent to the automatic renewal. ARL § 17603. As alleged herein, Defendant has failed to follow the ARL and has thus failed to obtain consumers' affirmative consent to the automatically renewing Product Subscriptions before charging them in violation of ARL § 17602(a)(2).

61. Defendants violated the ARL in several ways. First, the renewing subscription disclosure at the bottom of the checkout page is not "clear and conspicuous." It is not in "larger" or "contrasting" type—it is in smaller, lighter-in-color, and harder-to-read type, particularly as compared to the conspicuous and bolded phrases, "Pay a Small Shipping & Handling Fee of $7.95," "To Claim your FREE TRIAL Enter "Free Trial Details," "Rush My Trial Now,"[19] and language appearing on the current website, "90-day Money Back Guarantee." Likewise, the renewing subscription disclosure in the "welcome" email is in small, hard-to-read print. This does not satisfy the ARL.

62. Secondly, the checkout page disclosures have, at all times, contained insufficient information. When Plaintiff Semones partook in the free trial, the checkout page failed to explain that the first $120 charge would be for the first two months of

---

[19] https://web.archive.org/web/20240528210718/http://tryrelaxium.com/checkout.php

product—the "free trial" bottle and the second bottle that is effectively the first month of the renewing subscription. Currently—and when Plaintiff Leinen engaged in her transactions—the checkout page disclosures fail to disclose that to avoid these charges, the consumer must return an unopened bottle. And at all times, the checkout page disclosures failed to disclose that the consumer must call a phone number to obtain a "Return Merchandise Authorization" and must return the unopened bottle at the consumer's own expense. By including partial disclosures with a checkbox that omits necessary terms, Defendant necessarily fails to "obtain[] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms" (ARL § 17602(a)(2)) and to "obtain the consumer's express affirmative consent to the automatic renewal…" (ARL § 17602(a)(4)).

63. The failure to disclose the offer terms, as defined and required by the ARL, renders any expression of consent by the consumer not an "explicit consent for ongoing shipments of a product or ongoing deliveries of a service," ARL § 17600, or an "affirmative consent to the agreement," ARL § 17602(a)(2). A consumer cannot provide consent, far less explicit or affirmative consent, to terms of which they are unaware, either because they are not disclosed at all or because the disclosure is misleading.

64. ARL § 17602(a)(7) prohibits the misrepresentation of "any material fact related to the transaction…".

65. Despite this, Defendant misrepresents the transaction by representing that the transaction "comes with a Full 90-Day 100% money back guarantee," as part of a "free trial" that is "risk free." Given the fact that Defendant's transactions only allow a consumer to get their money back if they call a phone number, obtain a "Return Merchandise Authorization," and return an unopened bottle at their own expense, this is a misrepresentation of a "material fact related to the transaction." Defendant's gratuitous use of the terms "free" "Full" "100%" "risk free" and "90-day Money Back Guarantee" are misleading when the cancellation policy involves barriers to cancellation such as the requirement to call a phone number to obtain a "Return Merchandise Authorization" and

return an unopened bottle at the consumer's own expense.

66. After enrolling the customer in a Product Subscription, Defendant sends a welcome email, but that email does not contain the requisite information, including the complete Product Subscription offer terms, Defendant's cancellation policies, or how consumers can cancel the auto-renewal, in violation of ARL § 17602(a)(3).

67. As noted, complete automatic renewal offer terms are defined to include "[t]he description of the cancellation policy that applies to the offer." ARL § 17601(2)(B).

68. ARL § 17602(a)(3) requires an acknowledgment that includes "the automatic renewal offer terms… cancellation policy, and information regarding how to cancel" and "[i]f the automatic renewal offer … includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal … before the consumer pays for the goods or services."

69. Defendant violates this rule by a) failing to include the automatic renewal terms as defined, due to the absence of a cancellation policy; b) failing to provide the cancellation policy; and c) failing to disclose how to cancel the free trial period, including by not providing clear and conspicuous notice of the requirement to return an unopened bottle at the consumer's own expense.

70. In sum, Defendant's pre-purchase and post-purchase disclosures fail to comply with the ARL. Nowhere in the enrollment process does Defendant present the complete terms of the auto-renewal in a clear and conspicuous manner and in visual or temporal proximity to the offer before the purchase is completed in violation of ARL § 17602(a)(1). Defendant fails to obtain affirmative consent from consumers to the Product Subscriptions before completing the purchase in violation of ARL § 17602(a)(2). Defendant does not provide a post-purchase acknowledgment containing the information required in violation of § 17602(a)(3).

71. Finally, under AB 390, the ARL now requires e-commerce sellers,

doing business in California and who allow consumers to sign up for an auto-renewal online, as does Defendant, to provide an immediately available and "exclusively online" cancellation mechanism either in the form of a "prominently located" button or link on the consumers "account or profile," or an "immediately accessible" pre-written termination email provided by the business. Cal. Bus. & Prof. Code §§ 17602(d)(1)(A)–(B).

72. As is clear from Defendant's partial disclosure in its welcome emails and its return policy, Defendant does not make have any "exclusively online" cancellation mechanism. In order to avoid paying for the first "free trial" shipment, which includes one "free trial" bottle and a second bottle that is effectively the first renewal of the subscription, customers must call an 888- number in order to obtain a "Return Merchandise Authorization" number.

73. As a direct and proximate result of Defendant's violations of the ARL, Plaintiffs and the Classes have lost money and suffered economic harm.

## CLASS ALLEGATIONS

74. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed Classes:

<u>California ARL Class</u>

> All individuals in California who, within the relevant limitations period, were automatically enrolled in a Product Subscription and were charged at least one renewal fee by Defendant.

<u>California Consumer Fraud Subclass</u>

> All individuals in California who, within the relevant limitations period, (1) ordered the Product from Defendant's Website or by calling the phone line in Defendant's television advertising, (2) cancelled their subscription, and (3) were charged a fee for not returning an unopened bottle of the Product.

<u>Nationwide Class</u>

> All individuals who, within the relevant limitations period, (1) ordered the Product from Defendant's Website or by calling the phone line in Defendant's television advertising, (2) cancelled their subscription, and (3) were charged a fee for not returning an unopened bottle of the Product.

75. Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed classes.

76. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

77. This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below:

78. **Numerosity**. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are thousands of members of the proposed Classes (given Defendant's statements that Relaxium has "changed millions of lives"), the precise number of class members is unknown, but may be ascertained from Defendant's books and records.

79. **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

80. **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual

class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

*i.* Whether Defendant engaged in the conduct alleged in this Amended Complaint;

*ii.* Whether Defendant violated the applicable statutes alleged herein;

*iii.* Whether Defendant's conduct was directed at the State of California;

*iv.* Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

*v.* Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Amended Complaint, and if so, in what amounts;

*vi.* Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Amended Complaint; and

*vii.* Whether Defendant properly disclosed its automatic renewal terms, including the requirement to return an unopened bottle at the consumer's own expense, during the Class period.

81. **Typicality**. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured by Defendant's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its misleading advertisements is uniform for Plaintiffs and class members.

82. **Adequacy**. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

83. **Declaratory and Injunctive Relief**. Defendant has acted or refused

to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

84. **Superiority**. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

85. Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigation with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

86. There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

**(On behalf of Plaintiffs and the California Classes)**

87. Plaintiffs incorporate by reference all allegations in this Second Amended Complaint and restate them as if fully set forth herein.

88. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

89. Defendant's false and misleading advertising claims regarding the Product and the Product Subscriptions violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

90. First, Defendant's representations and omissions regarding the Product and the Product Subscriptions are unlawful because they are misleading to a reasonable consumer and violate the ARL, CLRA, and FAL as alleged herein.

91. Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Product and the Product Subscriptions are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

92. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

93. Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fact that a "free trial" does not involve "free" product, but rather delayed payment for a product, to be an important factor in deciding whether to

engage in the "free trial." In addition, the representations and omissions were material because a reasonable consumer would consider the ability to easily cancel a Product Subscription—including the ability to avoid charges without having to return Product to the manufacturer at their own expense—to be an important factor in deciding whether to purchase the Product via subscription. The representations and omissions were a substantial factor in Plaintiffs' decisions to partake in the "free trial."

94. As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs and the California Classes have suffered injury in fact and have lost money. Plaintiffs and the Classes paid an unwarranted premium for the Product and Product Subscriptions and/or were denied the benefit of the bargain.

95. Absent Defendant's misrepresentations and omissions, Plaintiffs and the Classes would not have purchased the Product or the Product Subscription or would have paid substantially less for them.

96. Plaintiffs seek relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the product has no market value, whereas that showing is not required for restitution.

97. Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Product Subscriptions. Plaintiffs remains in the market for products that have a positive impact on sleep, and Plaintiffs would purchase such products from Defendant if they could trust Defendant's marketing representations, but they cannot do so absent an injunction. Injunctive relief is therefore appropriate because Defendant continues to deceptively market the Product and Product Subscriptions without proper disclosure of the terms of sale. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs and the Classes, which cannot be achieved through available

legal remedies.

98. **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct. Defendant's false and deceptive advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## SECOND CLAIM FOR RELIEF

### Violation of California's False Advertising Law ("FAL")

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

### (On behalf of Plaintiffs and the California Classes)

99. Plaintiffs incorporate by reference all allegations in this Second Amended Complaint and restates them as if fully set forth herein.

100. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

101. The FAL prohibits not only advertising that is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

102. As Defendant's BBB complaints from consumers demonstrate, Defendant's conduct does not merely have the capacity, likelihood, or tendency to deceive or confuse the public, but has in fact deceived and/or confused the public.

103. Defendant violated section 17500 when it advertised and marketed the Product Subscriptions through the unfair, deceptive, and misleading representations and omissions disseminated to the public that they may receive a free trial with simple cancellation and full refunds "no questions asked." In reality, the Product and Product Subscriptions are sold with misleading statements about the cost of the trial product and without proper disclosure of the requirement that, to avoid charges, the consumer must return an unopened bottle at their own expense, a material consideration for reasonable consumers like Plaintiffs.

104. Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fact that a "free trial" does not involve "free" product, but rather delayed payment for a product, to be an important factor in deciding whether to engage in the "free trial." In addition, the representations and omissions were material because a reasonable consumer would consider the ability to easily cancel a Product Subscription—including the ability to avoid charges without having to return Product to the manufacturer at their own expense—to be an important factor in deciding whether to purchase the Product via subscription. The representations and omissions were a substantial factor in Plaintiff's decision to partake in the "free trial."

105. As a direct and proximate result of Defendant's violations of the FAL, Plaintiffs and the Classes have suffered injury in fact and have lost money. Plaintiffs and the Classes paid an unwarranted premium for the Products due to the misrepresentation of the cancellation policy and "money-back guarantee" and/or were denied the benefit of the bargain.

106. Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the Product or Product Subscription or would have paid substantially less for it.

107. Plaintiffs seek relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiffs would have to show that the product has no market value, whereas that showing is not required for restitution.

108. Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Product and Product Subscriptions. Plaintiffs remain in the market for products that have a positive impact on sleep, and Plaintiffs would purchase such products from Defendant if they could trust Defendant's

marketing representations, but they cannot do so absent an injunction. Injunctive relief is therefore appropriate because Defendant continues to deceptively market the "free trial," the "90-day money back guarantee," and the ease of cancelling subscription, and it continues to disguise its requirement that consumers return unopened bottles at their own expense. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs and Classes, which cannot be achieved through available legal remedies.

109. **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**THIRD CLAIM FOR RELIEF**

**Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code. §§ 1750 *et seq.***

**(On behalf of Plaintiffs and the California Classes)**

110. Plaintiffs incorporate by reference all allegations in this Second Amended Complaint and restate them as if fully set forth herein.

111. Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

112. Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

113. Defendant's Products are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

114. Defendant has violated § 1770(a)(5) by representing that the Product Subscriptions had characteristics they did not have, namely easy cancellation.

115. Defendant has violated § 1770(a)(9) by advertising the Product Subscriptions with an intent not to sell them as advertised, i.e. with an easy cancellation process.

116. Defendant's acts, practices, and omissions, set forth above, led customers falsely to believe that they will not be charged for the trial product, that any Product Subscriptions are easy to cancel, and that Defendant offers a "90-day money back guarantee." In reality, the "free trial" is not free, but involves delayed payment for the Product, and the Product Subscriptions are subject to an onerous requirement that consumers return unopened bottles at their own expense, which has the effect of trapping customers like Plaintiffs in subscription contracts they never intended.

117. Plaintiffs reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fact that a "free trial" does not involve "free" product, but rather delayed payment for a product, to be an important factor in deciding whether to engage in the "free trial." In addition, the representations and omissions were material because a reasonable consumer would consider the ability to easily cancel a Product Subscription—including the ability to avoid charges without having to return Product to the manufacturer at their own expense—to be an important factor in deciding whether to purchase the Product via subscription. The representations and omissions were a substantial factor in Plaintiff's decision to partake in the "free trial."

118. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiffs and the Classes. Absent Defendant's misrepresentations and omissions, Plaintiffs would not have purchased the Product Subscriptions or would have paid substantially less for them.

119. Plaintiffs seek relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiffs and the Classes. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages,

Plaintiffs would have to show that the product has no market value, whereas that showing is not required for restitution.

120. Plaintiffs also seek injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Product Subscriptions. Plaintiffs remain in the market for products that have a positive impact on sleep, and Plaintiffs would purchase such products from Defendant if they could trust Defendant's marketing representations, but they cannot do so absent an injunction. Injunctive relief is therefore appropriate because Defendant continues to deceptively market the "free trial," the "90-day money back guarantee," and the ease of cancelling subscription, and it continues to disguise its requirement that consumers return unopened bottles at their own expense. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiffs and the Nationwide and California classes which cannot be achieved through available legal remedies.

121. **Permanent public injunctive relief.** Plaintiffs also seek public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiffs seek a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA")

## 15 U.S.C. §§ 1693, *et seq*.

## (On behalf of Plaintiff Semones and the Nationwide Class)

122. Plaintiff Semones incorporates by reference all allegations in this Second Amended Complaint and restates them as if fully set forth herein.

123. Plaintiff seeks to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of himself and the Nationwide Class.

124. The Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693e, *et seq.*, provides a basic framework for establishing the rights, liabilities, and

responsibilities of participants in an electronic fund transfer system.[20] The "primary objective" of the EFTA "is the provision of individual consumer rights."

125. 15 U.S.C. § 1693e(a) provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[21]

126. Defendant's transfers of money from the financial accounts of Plaintiff and members of the Nationwide Class, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205, *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."[22] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[23]

127. The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693(a)(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and

---

[20] 15 U.S.C. § 1693, *et seq.*

[21] 12 C.F.R. § 205.10(b).

[22] *Id.* § 1693(a)(7).

[23] 12 C.F.R. § 205.3(b)(v)

will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

128. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id*. at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id*. at ¶10(b), comment 6.

129. The Official Staff Interpretation of Regulation E also explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation." *Id*. at 10(b), cmt. 2.

130. The EFTA includes a private right of action, stating:

> (a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—
>
> (1) any actual damage sustained by such consumer as a result of such failure;
>
> (2)
>
> (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or
>
> (B) in the case of a class action, such amount as the court may allow, except the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined

by the court.

15 U.S.C. § 1693m.

131. Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter," pursuant to § 1693(1).

132. On or about May 31, 2024, Plaintiff cancelled the "free trial" and any charges associated with the Product or Product Subscription. Despite this cancellation, on or about June 5, 2024, Defendant engaged in an unauthorized electronic funds transfer from Plaintiff's checking account, which Plaintiff had established primarily for personal, family, or household purposes.

133. Defendant debited Plaintiff's and class members' bank accounts on a recurring basis without obtaining Plaintiff's or class members' assent to the authorization to make electronic fund transfers. Further, Defendant failed to present the written authorization to Plaintiff and class members at the time the authorization was purportedly made.

134. Defendant debited Plaintiff's and class members' bank accounts on a recurring basis after Plaintiff and the class members revoked consent to such debits, thereby violating 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

135. Defendant's violation of the EFTA harmed Plaintiff and Nationwide Class Members.

136. As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and the Nationwide Class have suffered damages in the amount of the unauthorized debits taken by Defendant. *See* 1693(m). As a further direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and members of the Nationwide Class are entitled to recover statutory damages as provided in the EFTA, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.

§ 1693m.

**FIFTH CLAIM FOR RELIEF**

**COMMON LAW FRAUD**

**(On behalf of Plaintiffs and the Nationwide Class)**

137. Plaintiffs incorporate by reference all allegations in this Second Amended Complaint and restate them as if fully set forth herein.

138. Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could partake in a "free trial" of the Product without "risk" and could easily cancel if they were not satisfied.

139. However, despite Defendant's representations otherwise, Defendant's "free trial" was actually a deferred payment scheme that trapped consumers into a payment of at least $120 for the two bottles provided as part of the "trial." Further, in order to cancel any charges associated with the "free trial," consumers had to return an unopened bottle at the consumer's own expense, which was not properly disclosed at the point of sale and was otherwise confusing, deceptive, and unduly burdensome and oppressive.

140. These misrepresentations and omissions were known exclusively to, and actively concealed by Defendant, not reasonably known to Plaintiffs and Class members, and material at the time they were made. Defendant knew, or should have known, that the "free trial" was designed to lock consumers into a minimum payment of $120 for the two bottles provided as part of the "free trial," and that the cancellation process was deceptive and confusing to consumers, such that most if not all consumers would not comply with the cancellation process and would therefore incur the minimum $120 charge.

141. Defendant's misrepresentations and omissions concerned material facts that were essential to the decision by Plaintiffs and Class members to accept the "free trial" offered by Defendant. In misleading Plaintiffs and Class members, Defendant breached its duty to Plaintiffs and Class members. Defendant also gained financially

from, and as a result of, its breach.

142. Plaintiffs and Class members reasonably relied to their detriment on Defendant's misrepresentations and fraudulent omissions.

143. Plaintiffs and Class members have suffered an injury-in-fact, including the loss of money and/or property, as a result of Defendant's fraudulent conduct.

144. As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and Class members have suffered damages, as alleged above, and are entitled to just compensation, including monetary damages.

145. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class members and made in conscious disregard of Plaintiffs' and Class members' rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(On behalf of Plaintiffs and the Nationwide Class)**

146. Plaintiffs incorporate by reference all allegations in this Second Amended Complaint and restate them as if fully set forth herein.

147. As alleged above, Defendant's knowingly false and deceptive advertising caused Plaintiffs and the Class to pay for Product as part of a purported "free trial," without properly disclosing the autorenewal and cancellation terms. Defendant's practice therefore caused Plaintiffs and the Class to pay money to Defendant based on false and deceptive advertising and caused Defendant to be unjustly enriched by retaining fees associated with the "free trial."

148. Defendant has received a direct and unjust benefit at the Plaintiffs' and the Class's expense. Accordingly, Plaintiffs and the Class seek restitution and/or disgorgement of Defendant's ill-gotten gains.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, prays for relief and judgment against Defendant as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B. Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiffs and the class members appropriate relief, including actual, punitive, and statutory damages;

D. For declaratory and equitable relief, including restitution and disgorgement;

E. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

F. Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

G. Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

H. Awarding Plaintiffs public injunctive relief sufficient to prevent continuation or repetition of Defendant's illegal and unfair conduct;

I. Awarding pre-judgment and post-judgment interest; and

J. Granting any other relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: July 28, 2026 By: /s/ Ryan J. Ellersick

Ryan J. Ellersick
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780
ryan.ellersick@zimmreed.com

JANOVE PLLC

Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

*Attorneys for Plaintiffs and the Proposed Classes*